# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| THOMAS HORST, IGNACIO JAIMES, and ANA MUNOZ, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs <br><br> v. <br><br> IMER A. GOMEZ, DOUGLAS R. WALLACE, K&G INVESTMENT SOLUTIONS, LLC, HELIOS VENTURE FUND LLC, BANK OF AMERICA N.A., and JP MORGAN CHASE BANK, N.A., <br><br> Defendants. | **PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br><br> Civil Action No. 4:24-CV-03173 |

COMES NOW, Plaintiffs Thomas Horst, Ignacio Jaimes, and Ana Munoz, individually and on behalf of all other similarly situated, and for their First Amended Complaint against Defendants Imer A. Gomez, K&G Investment Solutions, LLC, Douglas R. Wallace, Helios Venture Fund, LLC, Bank of America, N.A., and JP Morgan Chase Bank N.A. ("Defendants") would show the Court and Jury as follows:

## I.
### NATURE OF THE CASE

1.     This claim seeks recovery of millions of dollars for Plaintiffs and all similarly situated victims who lost significant funds as a result of a Ponzi scheme perpetrated by Defendants Imer A. Gomez, Douglas R. Wallace, K&G Investments Solutions, LLC and Helios Venture Fund LLC with the aid of Defendants Bank of America N.A. and JP Morgan Chase Bank, N.A.

1

## II.
### JURISDICTION AND VENUE

2. Defendants removed this action from state court. Plaintiffs have disputed the jurisdiction.

## III.
### PARTIES

3. Plaintiff Thomas Horst ("Mr. Horst") is an individual who currently and at all relevant times resided in Travis County, Texas.

4. Plaintiff Ignacio Jaimes ("Mr. Jaimes") is an individual who currently and at all relevant times resided in Brazos County, Texas.

5. Plaintiff Ana Munoz ("Mrs. Munoz") is an individual who currently and at all relevant times resided in Harris County, Texas.

6. Defendant Imer A. Gomez ("Gomez") is an individual who currently and at all relevant times resided in San Antonio, Texas.

7. Defendant Douglas R. Wallace ("Wallace") is an individual who at all relevant times resided in Texas and was purported to be the Chief Financial Officer of K&G Investment Solutions, LLC.

8. Defendant K&G Investment Solutions, LLC ("K&G") is a trade name used by Gomez and Wallace. Upon information and belief, K&G is not now, nor has it ever been, a validly registered Limited Liability Company in any state of the United States. K&G has never been registered to do business in the state of Texas.

9. Defendant Helios Venture Fund, LLC ("Helios") is a Texas Limited Liability Company with Gomez as its sole member. President and CFO.

10. Bank of America N.A. ("BofA") is a Federally registered National Bank with its principle place of business located in North Carolina, but with offices an branches throughout Texas.

11.     JP Morgan Chase Bank N.A. ("JPM") is a Federally registered National Bank with its principle place of business located in New York, but with offices and branches throughout Texas.

## IV.
## SUMMARY OF CASE

12.     This is a case about a financial fraud perpetrated upon the Plaintiffs and other members of the public by the Defendants, some of whom held themselves out to be experienced and qualified financial professionals and money managers and others who aided and abetted the fraudulent scheme. Defendants Gomez, Wallace, K&G and Helios (the "Helios Defendants") claimed to provide "investment management services" and solicited Plaintiffs and others to entrust money to Defendants which was supposed to be invested in securities in a manner which would "protect capital, generate income and obtain capital growth."

13.     However, unbeknownst to Plaintiffs and others, the Helios Defendants are not investment managers. They do not hold any investment licenses to provide investment advice, or to buy or sell securities to or on behalf of others, nor are the Helios Defendants exempt from any such licensing requirements.

14.     In reality, the Helios Defendants were operating a fraud. In fact, on July 14, 2025, the Securities and Exchange Commission has filed suit against Gomez, K&G and Helios alleging that Gomez orchestrated a Ponzi scheme against Plaintiffs and other investors.[1] The funds entrusted to Defendants were not actually invested as was represented to Plaintiffs and others. Instead, upon information and belief, the Helios Defendants converted all or a substantial portion of the monies entrusted to them for their own benefit, and/or used them to pay off other investors with new investor money (the definition of a Ponzi scheme).

---

[1] *See* Original Complaint, *SEC v. Imer Gomez et al*, Civil Action Number 5:24-cv-805 (W.D. Tex, July 14, 2025).

15. Defendants BorA and JPM (the "Bank Defendants") aided and abetted these violations of the Texas Securities Act, as they knew or had ample evidence in their possession to know that the Helios Defendants were operating illegally, and still provided material assistance to them. The Helios Defendants and the Bank Defendants will be collectively referred to as the "Defendants".

16. As a result, Plaintiffs and other similarly situated investors have lost millions of dollars.

## V.
## FACTUAL ALLEGATIONS

17. Defendant Gomez claimed at all relevant times to be the president of K&G as well as Helios. Wallace claimed to be the Chief Financial Officer of K&G and held currently unknown roles with Helios Venture Fund.

18. At all relevant times to this Petition, Gomez held himself out as a financial professional who would act as an "Investment Manager" for public investors. To that end, he personally, as well as through various agents and referrals, solicited the investment of public investors including the Plaintiffs between approximately August 2021 and September 2023.

19. Gomez told prospective investors, including Plaintiffs, that he was an "experienced trader" who could provide investor clients with double digit rates of return *per month* by trading securities on their behalf. He further claimed that client investments were "insured for up to 75% of the Client's Portfolio …."

20. These representations were false. Gomez is not, and never has been, an "experienced trader". To the contrary, Gomez is a self-identified professional gambler with no known experience investing or managing money on behalf of clients. Further, the claims of insurance were false. No insurance policy ever existed to protect client accounts from losses.

21. Gomez entered into agreements purportedly on behalf of K&G acting as its "President." However, K&G is not, nor does it appear it has ever been, an actual limited liability company. No

such entity appears to have ever been registered in the state of Texas, nor has Gomez or anyone else registered a "K&G Investment Solutions" as a trade name in the state of Texas. No such LLC is or has ever been registered in the state of Delaware, or any other state Plaintiffs were able to search.

22. Gomez entered into various written, form agreements where the terms are effectively the same for all investors and members of the prospective class. These agreements that were made at or before the time of Plaintiffs and other investors' investment included numerous misrepresentations. For example, Plaintiff Ana Munoz executed an agreement with the Helios Defendants on December 8, 2022, which included various representations, including but not limited to:

- that Gomez, purportedly as an agent of K&G, would act as her "agent and attorney-in-fact to supervise, manage and direct [Ms. Munoz's investments] on a discretionary basis; to purchase, sell, invest, exchange, convert and trade any securities and investments and other transaction therein."

- that "Clients will be required to deposit his or her funds to [Helios Defendants] bank accounts **to be routed into Clients' personalized and managed portfolio."** (emphasis added)

- that Gomez would "use [his] best efforts to manage and select investments for [Ms. Munoz] to protect capital, generate income and obtain capital growth ….",

- that Ms. Munoz's funds would be "routed into Clients personalized and managed portfolio ….",

- that the Helios Defendants would select a broker, dealer or "other counterpart" to execute the transactions for Plaintiffs, and

- that "At no time will [the Helios Defendants] have custody of [Ms. Munoz's] assets."

23. All of these statements were false when printed, were false when presented to Ms. Munoz, and the Helios Defendants – specifically including Gomez – knew they was false. At no time during the two plus years that Gomez was actively soliciting and accepting new investors did

5

Gomez or any of the Helios Defendants open any investment accounts with investor money, "route" any client money into "personalized and managed portfolios," or supervise, manage, or direct any investments for investors, or purchase, sell, invest, exchange, convert and trade any securities and investments and other transaction therein. Quite the contrary, the Helios Defendants used client funds to sustain a lavish lifestyle, make Ponzi payments, and fund unrelated business ventures.

24. Gomez never did, nor did he have any intention, invest client funds, manage or select investments to protect capital and generate income, or any of the rest of the representations made about how Plaintiffs and other class members' fund would be handled. Directly contrary to Gomez's promises, **at all times** the Helios Defendants had custody of Plaintiffs' assets, as no other accounts existed. Those assets were held by the Helios Defendants until they were stolen or otherwise converted by the Helios Defendants, or used to make payments to earlier investors in typical Ponzi fashion.

25. Neither Gomez nor K&G (nor any of the other Defendant) currently or at any relevant time have held any securities licenses which would legally permit them to make investment recommendations, buy and sell securities on behalf of others, or to direct the management of investments on behalf of others. However, the Helios Defendants failed to disclose this information to Plaintiffs or any of the investors.

26. After obtaining their agreement to invest, Gomez, or agents on his behalf, would direct investors to deposit their "investment" into bank accounts in the name of Helios or one of the other Helios Defendants. Upon information and belief, all investments made in this way by all investors, not exclusively Plaintiffs, were made either to a bank account in the name of one of the Helios Defendants at BofA or JPM.

27. Despite its name, Helios is also not a licensed securities company. It is not, nor has it been at any relevant time, a registered investment company, registered broker-dealer, or a registered investment advisor under any applicable state or federal licensing statutes. However, the Helios Defendants failed to disclose this information to Plaintiffs or any of the investors.

28. Moreover, while Helios does now exist in Texas as a Limited Liability Company with Gomez as the managing member, it was not established until January 2023, far after most of the funds for the Plaintiffs and other investors was deposited with the Bank Defendants and subsequently stolen. The Helios Defendants failed to disclose this information to Plaintiffs or any of the investors.

29. Thereafter, Gomez, or agents at his direction, would periodically provide investment "updates" to Plaintiffs and other investors which claimed various investment results, almost always gains. These statements were entirely fabricated, as the Helios Defendants never created or funded individual client accounts, despite the Helios Defendants' initial representations that they would, nor the ongoing representations made in these "statements" that individual accounts did actually exist. These false claims of favorable investment performance were used and relied upon by investors to encourage additional investments, or to refer friends and family to Gomez to also invest with him.

30. Directly contrary to the numerous representations described above, between August 2021 and September 2023, the Helios Defendants received from clients including the Plaintiffs' investments recently alleged to total approximately $9 million. Gomez used the majority of client funds to make Ponzi payments to other clients, pay personal expenses, pay non-client third parties (including for other business ventures), pay employees and pay commissions/bonuses for client referrals, or to make cash withdrawals.

## The Bank Defendants

31.     BofA and JPM (the "Bank Defendants") are required to, and actually do, collect and maintain information about their customers and their banking behavior in order to, among other things, detect and prevent money laundering and fraud and to protect themselves from third party liability and reputational injury. For these purposes, the Bank Defendants are required to maintain procedures to determine the identity of each customer, *see* 31 C.F.R. §§ 1020.220(a)(1), (2), and to collect information about the holder of each account, *see* 31 C.F.R. § 1020.220(a)(2).

32.     When an entity rather than an individual opens an account, the banks obtain information about the individual who will control the account. *See* 31 C.F.R. § 1020.220(a)(2)(ii)(C). The information that the Bank Defendants collect about new business account clients includes the purpose and nature of the business, anticipated activity in the account (e.g., volume, value, and type of transaction), where the customer expects to transact business, and the products and services commonly used by the customer.

33.     Using the information collected, as well as external resources such as internet search engines and public and commercial record databases, the Bank Defendants create an initial client profile and assign a compliance-related risk rating. Neither the profile, nor the risk rating, is final or static. When a bank becomes aware that customer information has materially changed, its internal controls require updating that information and, where appropriate, reassessing the customer's risk profile or rating. One of the ways in which the bank becomes aware of such changes is when the customer's transactions appear inconsistent with the bank's understanding of the nature and purpose of the account.

34.     The Bank Defendants also maintain internal controls to ensure ongoing compliance with federal anti-money laundering laws ("AML"). These include independent testing of the bank's

compliance procedures, regular monitoring of compliance effectiveness, and training of compliance personnel. These controls also include customer due diligence programs to prevent and detect money laundering.

35. Through these programs, the Bank Defendants obtain information that gives them an understanding of the unique financial activity of its customers. Likewise, the Bank Defendants can project with reasonable certainty the type and frequency of transactions in which its customers are likely to engage, including the dollar volume and transaction volume typical of each account. This knowledge is used to identify unusual and suspicious transactions.

36. The Bank Defendants further use a combination of software and human compliance personnel to monitor on an ongoing basis the transactions in customer accounts to watch for problematic transactions, such as ones which are outside the bank's expectations.

37. As a result of these systems, the Bank Defendants had actual awareness of, among other things, that:

    a. the Helios Defendants claimed to be in the investment management business;

    b. the Helios Defendants carried no applicable securities licenses;

    c. the Helios Defendants were not transferring the money being deposited by public investors to any broker-dealer or other investment firm which would be capable of fulfilling any legitimate investment management business; and

    d. as a result, the Bank Defendants knew that the Helios Defendants were violating the Texas Securities Act in multiple ways.

38. A Ponzi scheme cannot operate without banks to receive and pay out investor funds. The Helios Defendants could not have carried out the fraudulent enterprise without the active assistance of the Bank Defendants. The Bank Defendants tracked the account activity of the Helios

Defendants and saw that the accounts were being used to operate a Ponzi scheme or other fraudulent enterprise. The Bank Defendants nevertheless accepted millions of dollars into the accounts, and then executed transactions through which investor funds were diverted for improper purposes, with no legitimate underlying business transactions or revenues. Instead of terminating the accounts in response to these misuses, the Bank Defendants carried out the scheme.

39. The Bank Defendants had at least an awareness of the violations. These facts give rise to a strong inference that the Bank Defendants knew that their assistance to the Helios Defendants would facilitate untruthful or illegal activity, or, at a minimum, the Bank Defendants recklessly disregarded that risk.

## VI.
## CLASS ACTION ALLEGATIONS

40. Plaintiffs bring this action on their own behalf and as a class action on behalf of all investors with K&G and/or Helios who have been harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

41. This action is properly maintainable as a class action.

42. The Class is so numerous that joinder of all members is impracticable. Based upon Plaintiffs' own investigations to date, there are more than 100 individual investors who would be within the Class, and there are likely considerably more than the 100 known individual investors.

43. There are questions of law and fact that are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, but are not limited to:

    a. Whether K&G and/or Helios breached their contracts with the Class Members by failing to:

10

      i. as their "agent and attorney-in-fact to supervise, manage and direct [Class Members' investments] on a discretionary basis; to purchase, sell, invest, exchange, convert and trade any securities and investments and other transaction therein;"

     ii. "use [its] best efforts to manage and select investments for [Class Members] to protect capital, generate income and obtain capital growth…";

    iii. Select and utilize a legitimate, licensed broker-dealer to execute trades on the Class Members' behalf;

    iv. Provide a legitimate custodian for the Class Members' assets despite representing and promising that it would be done.

b. Whether the Helios Defendants violated the Texas Securities Act ("TSA") by purporting to act as a broker, dealer, or investment advisor without being licensed to do so, and where no applicable exemption from registration applies;

c. Whether the Helios Defendants violated the TSA by offering securities or investment management by means of untrue statements of fact;

d. Whether Gomez is a "control person" of K&G and/or Helios, as that term is defined by the Texas Securities Act;

e. Whether Wallace is a "control person" of K&G and/or Helios, as that term is defined by the Texas Securities Act;

f. Whether the Helios Defendants acted to operate a Ponzi scheme and steal, misappropriate, or misdirect the Class members' investments for the Helios Defendants' own benefit;

g. Whether BofA was an "aider" of the Helios Defendants' various securities law

11

  violations, as that term is defined by the TSA;

 h. Whether JPM was an "aider" of the Helios Defendants' various securities law violations, as that term is defined by the TSA.

 i. Whether the Helios Defendants have unjustly enriched themselves or other insiders or affiliates with the Class Members' money.

 j. Whether the Defendants, or a portion of the Defendants, committed a fraud and/or conspired together to commit a fraud against the Class Members and convert the Class Members' monies for their own use and benefit.

 k. Whether documents disseminated to the Class Members misrepresented material facts about the business, finances, and distributions of the Helios Defendants.

 l. Whether documents disseminated to the Class Members misrepresented and/or omitted to disclose material facts about the business, finances, and distributions of the Helios Defendants.

 m. The extent to which the Class Members have sustained damages and the proper measure of damages.

44. Plaintiffs' claims are typical of the claims of the other members of the Class and Plaintiffs do not have any interests adverse to the Class.

45. Plaintiffs are adequate representatives of the Class, have retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

46. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

47. Plaintiffs anticipate that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

48. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief herein with respect to the Class as whole.

## VII.
## CAUSES OF ACTION

### First Claim for Relief
*Violation of the Texas Securities Act*
**(Against All Defendants)**

49. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

50. Plaintiffs' investments qualify as securities as that term is defined under § 4001.068 TEXAS GOVERNMENT CODE.

51. The Helios Defendants offered and purported to sell securities within the state of Texas to residents of the state of Texas, and are therefore subject to the Texas Securities Act. *See* TEXAS GOVERNMENT CODE § 4001.001, *et seq*.

52. The Helios Defendants and/or their agents are liable under § 4008.052 of the TEXAS GOVERNMENT CODE in that they offered and sold a security by means of untrue statements of material fact and/or by the omission to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and Plaintiff was damaged thereby.

53. Additionally, and in the alternative, the Helios Defendants are liable under § 4008.051 the

13

TEXAS GOVERNMENT CODE as they offered and purported to sell securities within the state of Texas which were not registered as securities in Texas, and which were not exempt from the requirement to register prior to sale within the state of Texas.

54. Additionally, and in the alternative, the Helios Defendants are liable under § 4008.051 the TEXAS GOVERNMENT CODE as they offered and sold securities within the state of Texas when the Helios Defendants were required to be registered, and they were not.

55. Additionally, and in the alternative, all Defendants are liable under § 4008.055(c) of the TEXAS GOVERNMENT CODE in that they materially aided the violations at issue through an intent to deceive or defraud or with reckless disregard for the truth or the law. Defendants rendered assistance in the face of a perceived risk that his or its assistance would facilitate untruthful or unlawful activity by the primary violator(s) and each possessed a general awareness that his or its role was part of an overall activity that was improper.

56. Additionally, and in the alternative, Defendants Gomez and Wallace, by virtue of their positions and relationships, were control persons of K&G and Helios within the meaning of § 4008.055(a) of the TEXAS GOVERNMENT CODE as they had the power and influence to control the acts of K&G and Helios and exercised the same power and influence. As a consequence, they are jointly and severally liable for any violations.

57. As a result of these violations, and pursuant to § 4008.057 of the TEXAS GOVERNMENT CODE, Plaintiffs are entitled to recover from the Defendants their initial investment amounts plus interest thereon at the legal rate from the date of Plaintiffs' purchase; plus costs and reasonable attorney's fees.

## Second Claim for Relief
### *Fraud*
### (Against Helios Defendants)

58. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

59. As alleged with specificity in this Complaint, the Helios Defendants knowingly made false statements of fact to the Plaintiffs, and/or omitted or concealed true statements of fact from the Plaintiffs. Defendants' false and incomplete statements created an untrue and misleading impression in the mind of Plaintiffs. With respect to each such true statement alleged to have been omitted or concealed by the Helios Defendants, the Helios Defendants owed the Plaintiffs a duty to disclose the truth of such omitted or concealed fact. These facts were material in Plaintiffs' decisions to invest with Helios Defendants and to maintain the investment with Helios Defendants because a reasonable person under the circumstances would regard the facts misrepresented and otherwise omitted as important in deciding to enter into the transaction. Defendants knew that Plaintiffs would find the misrepresented and omitted facts to be important in deciding how to proceed.

60. The statements and omissions of the Helios Defendants as alleged herein were untrue.

61. Helios Defendants knew or should have known at the time they made the representations and omissions that their affirmative statements as alleged herein were false and/or that their omissions or concealments were deceptive by virtue of being incomplete.

62. The Helios Defendants made false statements, and engaged in the omissions and concealments, with the intent to defraud the Plaintiffs and in order to induce the Helios Plaintiff to rely on the statements, omissions and concealments.

63. As a result of Defendants' fraudulent statements and omissions, Plaintiffs have suffered

damages and are also entitled to rescission of the transactions.

### Third Claim for Relief
*Fraudulent Inducement*
**(Against Helios Defendants)**

64. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

65. As described herein, Plaintiffs were fraudulently induced to invest. The Helios Defendants made numerous false representations about their business and what they would do with Plaintiffs' money, as described above.

66. Had Plaintiffs been told the truth, Plaintiffs would never have agreed to invest.

67. As a result of these fraudulent inducements, Plaintiffs have suffered damages and are also entitled to rescission of the transaction.

### Fourth Claim for Relief
*Breach of Contract*
**(Against Gomez)**

68. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

69. As described in this Complaint, Defendant Gomez entered into a contract with Plaintiffs that included a number of discrete contractual obligations, as described above.

70. Gomez breached these obligations, and Plaintiffs suffered damages as a result.

### VIII.
### JOINT AND SEVERAL LIABILITY, RESPONDEAT SUPERIOR AND AGENCY

71. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

72. During the time of the acts of Defendants which harmed Plaintiffs, Gomez, Wallace, and

any other agents acting on behalf of the Helios Defendants had actual or apparent authority to act on behalf of the other Helios Defendants.

73. Therefore, Plaintiffs invoke the doctrines of agency liability, *respondeat superior,* and vicarious liability against Defendants. Furthermore, Defendants acted together in concert to cause damages to Plaintiffs, each committed all or part of the above-described acts which caused harm to Plaintiffs, and each aided and abetted other Defendants in the commission of those acts.

74. As a result, Plaintiffs invoke the doctrine of Joint and Several Liability for each of the Defendants for all damages and causes of action claimed herein.

## IX.
## Discovery Rule and Fraudulent Concealment

75. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

76. As described above, Plaintiffs did not know and could not have known that the Defendants were lying about investments being made on their behalf, and that claims of actual investments and investment returns were entirely fabricated, or that the Helios Defendants were not registered when they were required to be so registered. Plaintiffs were at the mercy of Defendants to accurately inform them, as Plaintiffs had no access to the underlying records of where their monies were directed after the initial investment. As such, the injuries are inherently undiscoverable.

77. The injury is also objectively verifiable. The books and records of the Defendants can and will definitively document the occurrence of the misconduct and the date(s) it took place.

78. Additionally, and alternatively, Defendants fraudulently concealed the wrongdoing complained of herein.

79. As a result, the applicable statutes of limitation were tolled until Plaintiffs discovered the wrongdoing.

# X.
## DAMAGES
### Economic and Actual Damages

80. By reason of the above and foregoing, Plaintiffs have sustained economic and actual damages exceeding $1,000,000, as will be proven at the trial of this matter, including all sums lost as a result of the wrongful acts of the Defendants, statutory damages, lost opportunities, interest at the legal rate, and costs of this proceeding.

### Exemplary Damages

81. Plaintiffs will further show that the acts and omissions of the Defendants complained of herein were committed with gross negligence and/or knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendants at the expense of Plaintiffs. In order to punish said Defendants for such unconscionable acts and to deter such actions and/or omissions in the future, Plaintiffs also seek recovery of exemplary damages from the Defendants as provided by Section 41.003(1) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.

### Costs and Attorney's Fees

82. Plaintiffs hereby request the Court award Plaintiffs all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and/or the Supreme Court of Texas, as the Court deems equitable and just, pursuant to § 4008.057 of the TEXAS SECURITIES ACT, and TCPRC § 38.001.

## XI.
### CONDITIONS PRECEDENT

83. All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## XII.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment to be entered against Defendants, jointly and severally, as follows:

a. Declaring that this action is properly maintainable as a class action;

b. Awarding Plaintiffs and other members of the Class actual, consequential, additional, special and incidental damages in an amount to be determined by the trier of fact;

c. Awarding Plaintiffs and other members of the Class exemplary/additional damages as permitted by law;

d. Awarding Plaintiffs and the other members of the Class costs, attorney's fees, and expert witness fees, including those provided in TEXAS GOVERNMENT CODE § 4008.060 and under TCPRC § 38.001;

e. Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest provided by law;

f. Awarding Plaintiffs and the other members of the Class costs of suit;

g. Awarding Plaintiffs and the other members of the Class all other relief, in law and in equity, to which they may be entitled.

Respectfully submitted,

**SHEPHERD, SMITH, EDWARDS & KANTAS, LLP**

  /s/ *Samuel B. Edwards*
Samuel B. Edwards (TSBN: 24031634)
Ryan Cook (TSBN: 24080840)
1010 Lamar, Suite 900
Houston, Texas 77002
sedwards@sseklaw.com
rcook@sseklaw.com
Telephone:	713.227.2400
Facsimile:	713.227.7215

**ATTORNEYS FOR PLAINTIFFS**